RENDERED: SEPTEMBER 29, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1109-MR

ALFONSO DIAZ-DIAZ                                                          APPELLANT

APPEAL FROM WOODFORD CIRCUIT COURT
v.        HONORABLE JEREMY MICHAEL MATTOX, JUDGE
ACTION NO. 13-CR-00061

COMMONWEALTH OF KENTUCKY                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CETRULO AND COMBS, JUDGES.

THOMPSON, CHIEF JUDGE: Alfonso Diaz-Diaz appeals from an order of the

Woodford Circuit Court which denied his Kentucky Rules of Criminal Procedure

(RCr) motion to vacate his conviction due to ineffective assistance of counsel.

Appellant argues that he was denied effective assistance of counsel because his

counsel did not communicate effectively with him due to a language barrier.

Appellant also claims that trial counsel failed to conduct an adequate pretrial

investigation, failed to hire a toxicologist, failed to hire an accident

reconstructionist, and failed to subject a blood test to a *Daubert*[1] hearing.

Appellant also argues that his trial counsel failed to inform him of possible lesser

included sentences that may have been available. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

On April 21, 2013, Appellant attended a rodeo in Woodford County.

At this rodeo, Appellant consumed alcohol. Appellant began causing a disturbance

at the rodeo and was asked to leave by security. Evidence in the record indicates

that security believed Appellant was intoxicated. Appellant left the rodeo in his

vehicle. He eventually began driving in the wrong lane on US 60 in Woodford

County. Multiple 911 calls were made regarding his driving. Ultimately,

Appellant crashed into a vehicle being driven by the Cohern family. Three adults

and a child were injured, one child was killed, and another child was uninjured. At

the accident site, Appellant smelled of alcohol and police found twelve empty beer

bottles in his vehicle.

On July 3, 2013, a grand jury indicted Appellant on one count of

murder;[2] four counts of first-degree assault;[3] two counts of first-degree wanton

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

[2] Kentucky Revised Statutes (KRS) 507.020.

[3] KRS 508.010.

endangerment;[4] one count of operating a motor vehicle while under the influence of alcohol (DUI), first offense, with aggravating circumstances;[5] and one count of operating a vehicle without a license.[6] Appellant hired attorney Brian Darling to represent him. Mr. Darling had previously represented Appellant and spoke Spanish.

On June 4, 2014, Appellant entered a guilty plea in which he would plead guilty to all the charges and receive a twenty-five-year term of imprisonment. During the plea hearing, Appellant and the trial court entered into a lengthy plea colloquy. Although Appellant spoke little English, a Spanish speaking interpreter from the Administrative Office of the Courts (AOC) was present. His sentencing was then set for August 6, 2014.

Two days before the sentencing, Appellant, through counsel, filed a motion to withdraw his guilty plea. On August 6, the trial court heard arguments on the motion. Appellant argued that he was not a native Spanish speaker, but raised speaking a language called Zoque. Appellant alleged that while he could speak the Spanish language, he did not fully understand the legal terms used by his attorney and the AOC Spanish interpreter. In other words, Appellant claimed that

---

[4] KRS 508.060.

[5] KRS 189A.010(5)(a).

[6] KRS 186.410(1).

he was not fully aware of what the guilty plea meant and did not understand that he was being sentenced to twenty-five years in prison. The trial court denied the motion to withdraw the guilty plea and sentenced Appellant according to its terms.

On June 9, 2015, Appellant filed a *pro se* RCr 11.42 motion alleging ineffective assistance of counsel. In July of 2015, the trial court issued an order setting the matter for a hearing and appointed the Department of Public Advocacy to represent Appellant.[7] The DPA attorney then filed a supplemental RCr 11.42 motion which included additional allegations of ineffective assistance of counsel.

In November of 2019, the trial court held a two-day hearing. The following people testified at the hearing: Appellant; Mr. Darling, Appellant's trial attorney; Dr. Rusty Barrett, a linguistic anthropologist and expert in the Zoque language; and Ilse Apestegui, the AOC interpreter who was present at Appellant's plea hearing and sentencing hearing. On August 15, 2022, the trial judge denied Appellant's RCr 11.42 motion. This appeal followed.

## STANDARD OF REVIEW

Generally, to prevail on a claim of ineffective assistance of counsel, Appellant must show two things:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not

---

[7] Judge Rob Johnson presided over Appellant's plea and sentencing hearings. Judge Jeremy Mattox presided over Appellant's RCr 11.42 motion and hearing.

functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Id.*

An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Id.* at 691-92, 104 S. Ct. at 2066-67 (citations omitted). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S. Ct. at 2067. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068.

At the trial court level, "[t]he burden is upon the accused to establish convincingly that he was deprived of

-5-

some substantial right which would justify the extraordinary relief afforded by . . . RCr 11.42." On appeal, the reviewing court looks *de novo* at counsel's performance and any potential deficiency caused by counsel's performance.

And even though, both parts of the *Strickland* test for ineffective assistance of counsel involve mixed questions of law and fact, the reviewing court must defer to the determination of facts and credibility made by the trial court. Ultimately however, if the findings of the trial judge are clearly erroneous, the reviewing court may set aside those fact determinations. [Kentucky Rules of Civil Procedure (CR)] 52.01 ("[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witness.") The test for a clearly erroneous determination is whether that determination is supported by substantial evidence. This does not mean the finding must include undisputed evidence, but both parties must present adequate evidence to support their position.

*Brown v. Commonwealth*, 253 S.W.3d 490, 500 (Ky. 2008) (citations omitted).

Keeping the above standard in mind, we must also take into account that this case involved a guilty plea. When analyzing alleged ineffective assistance of counsel claims as they pertain to guilty pleas, we must consider the following:

A showing that counsel's assistance was ineffective in enabling a defendant to intelligently weigh his legal alternatives in deciding to plead guilty has two components: (1) that counsel made errors so serious that counsel's performance fell outside the wide range of professionally competent assistance; and (2) that the deficient performance so seriously affected

-6-

the outcome of the plea process that, but for the errors of counsel, there is a reasonable probability that the defendant would not have pleaded guilty, but would have insisted on going to trial.

Evaluating the totality of the circumstances surrounding the guilty plea is an inherently factual inquiry which requires consideration of "the accused's demeanor, background and experience, and whether the record reveals that the plea was voluntarily made." While "[s]olemn declarations in open court carry a strong presumption of verity," "the validity of a guilty plea is not determined by reference to some magic incantation recited at the time it is taken [.]" The trial court's inquiry into allegations of ineffective assistance of counsel requires the court to determine whether counsel's performance was below professional standards and "caused the defendant to lose what he otherwise would probably have won" and "whether counsel was so thoroughly ineffective that defeat was snatched from the hands of probable victory." Because "[a] multitude of events occur in the course of a criminal proceeding which might influence a defendant to plead guilty or stand trial," the trial court must evaluate whether errors by trial counsel significantly influenced the defendant's decision to plead guilty in a manner which gives the trial court reason to doubt the voluntariness and validity of the plea.

*Bronk v. Commonwealth*, 58 S.W.3d 482, 486-87 (Ky. 2001) (citations omitted).

## ANALYSIS

Appellant's first argument on appeal is that his counsel was ineffective because trial counsel could not properly communicate with him. Appellant claims that trial counsel failed to realize that Appellant could not effectively understand or communicate in Spanish, did not hire an interpreter who

-7-

could speak Zoque, and caused him to enter a guilty plea involuntarily. Appellant testified at the RCr 11.42 hearing that he could not always understand Mr. Darling when he was trying to explain legal concepts to him and that counsel's Spanish was sometimes unclear. Dr. Barrett, the Zoque language expert, testified that he spoke with Appellant and discussed the case with him. Dr. Barrett's conclusion was that, while Appellant was proficient in Spanish, he had difficulty understanding specialized legal terms and concepts and was unable to effectively communicate with his attorney throughout the legal process.

On the other hand, Mr. Darling testified that he was able to communicate with Appellant using Spanish. He also testified that he would sometimes utilize AOC interpreters when speaking with his client in conference rooms at the courthouse.[8] In addition, Ms. Apestegui, the AOC interpreter, testified that, because of her profession, she had a good sense about whether a defendant was having trouble understanding her translation. When asked if she believed Appellant had difficulty understanding her, she testified that he was able to understand her, and she saw no indications Appellant was having trouble.[9] She

---

[8] Appellant testified that Mr. Darling never used an interpreter.

[9] Ms. Apestegui could not remember specifics regarding Appellant's plea and sentencing hearings; however, she reviewed the video recordings of both hearings and based her testimony off of that review.

also testified that if she believed Appellant could not fully understand her, she would have notified the court.

The trial court concluded that Appellant was able to understand the guilty plea process. The court based this on the testimony of Mr. Darling and Ms. Apestegui. In addition, Judge Mattox reviewed the plea and sentencing hearings and noted that Judge Johnson spent around twenty minutes on Appellant's plea colloquy. Further, any time Appellant expressed he was having difficulty understanding during the plea hearing, Judge Johnson would explain things to him. Judge Johnson also asked Appellant if Mr. Darling had explained the plea agreement to him and explained his rights. Appellant answered in the affirmative to those questions. Finally, Appellant ably asked Judge Johnson and the AOC interpreter for clarification and to repeat themselves a few times during the hearings, and those requests were carried out.

Based on these facts, the trial court believed Appellant was able to understand the guilty plea process. We find no error. Judge Mattox was faced with competing theories on whether Appellant was able to fully understand the plea process. It was his prerogative which testimony to find more credible, *Brown*, *supra*, and we must defer to his findings if they are supported by substantial evidence. We believe that there is substantial evidence to support the trial court's conclusion. Mr. Darling and Ms. Apestegui both believed Appellant understood

what was happening during the plea and sentencing hearings. Additionally, the plea colloquy was extremely thorough and Appellant stated that he understood his rights and was satisfied with Mr. Darling's representation. Trial counsel was not ineffective in this instance.

Appellant's next argument on appeal is that trial counsel was ineffective for failing to conduct a thorough pretrial investigation before advising Appellant to enter a guilty plea. Appellant claims that Mr. Darling did not review the discovery with him, inform him of any defenses he might have should the case go to trial, or inform him of any independent investigations that might be carried out in his defense.

Appellant does not advise this Court as to how a pretrial investigation would have benefited his case. He points to no witnesses or other evidence that could potentially help his cause. Appellant was found at the scene of the accident, his car was involved in the accident, and he was driving on the wrong side of the road. He also admitted on the record before the trial court that he caused the accident. A pretrial investigation would have been futile.

In addition, Mr. Darling testified that he did review the case with Appellant, including the discovery and possible defenses he might have. Mr. Darling also testified that he discussed the possibility of getting a lengthier

sentence if he went to trial.  Finally, Mr. Darling testified that Appellant's focus was getting the best plea deal possible.

Again, we have an instance of conflicting testimony.  When it comes to witness credibility and weighing testimony, we must defer to the trial court. *Brown*, *supra*.  Here, the trial court found no error and that finding is supported by substantial evidence.

Appellant next argues that trial counsel was ineffective for failing to hire a toxicologist as an expert witness and for failing to request a *Daubert* hearing. After the accident, Appellant was transported to the hospital and his blood was drawn.  A blood serum test was conducted and the alcohol content in his blood serum was found to be 220 mg/dL.  "Blood serum occurs when the solid cellular material in whole blood is precipitated out, leaving only the liquid portion called serum.  When this serum is tested for alcohol a higher BAC[10] often results as more alcohol is concentrated in the liquid serum." *Love v. Commonwealth*, 55 S.W.3d 816, 821 (Ky. 2001).  Appellant argues that a toxicologist could have thrown doubt onto his level of intoxication due to a serum test being performed and not a whole blood test, which is the usual method of testing for alcohol intoxication.  Appellant also argues that a *Daubert* hearing would have shown a serum test is unreliable.

KRS 189A.010(1) states in pertinent part:

---

[10] Blood alcohol concentration.

A person shall not operate or be in physical control of a motor vehicle anywhere in this state:

(a) Having an alcohol concentration of 0.08 or more as measured by a scientifically reliable test or tests of a sample of the person's breath or blood taken within two (2) hours of cessation of operation or physical control of a motor vehicle[.]

KRS 189A.005(1) defines alcohol concentration as "either grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath[.]" Here, Appellant argues that a toxicologist and *Daubert* hearing could have shown that blood serum testing was not a reliable method of determining if a person was above the legal limit of alcohol intoxication according to the standards set out in Kentucky statutes.

We do not believe Mr. Darling was ineffective as to this issue. A person's BAC is not required to prove the crime of driving under the influence. KRS 189A.010(1)(b) states that it is unlawful for a person to operate a vehicle under the influence of alcohol. KRS 189A.010(3) allows proof, other than a person's BAC, to be introduced to prove intoxication. Here, there was ample proof that Appellant was intoxicated while he was driving. He was asked to leave the rodeo due to intoxication, he was driving on the wrong side of the road, there were twelve empty beer bottles in his car, and he smelled like alcohol. There was a plethora of proof showing that Appellant was driving while intoxicated even

-12-

without a BAC. A toxicologist and *Daubert* hearing were unnecessary and we find no error.

Appellant's next claim is that Mr. Darling should have consulted with an accident reconstructionist. This argument is without merit. As the trial court stated in the order being appealed, "[t]he employment of an accident reconstructionist would [not] make any difference whatsoever." We agree. Appellant was driving on the wrong side of the road and collided with the Cohern family's vehicle. How an accident reconstructionist could have helped Appellant's case is unclear. Again, we find no error.

Appellant's next argument on appeal is that his trial counsel was ineffective for failing to inform him that, had he gone to trial, he would have been eligible for jury instructions which would include lesser included offenses. Again, we find no error here. Mr. Darling testified that he went over the elements of the case with Appellant and possible lesser included offenses. In addition, Mr. Darling testified that Appellant was focused on getting the best plea deal possible with the least amount of time. We find no error as to this issue.

Appellant's final argument on appeal is that he was denied effective assistance of counsel due to trial counsel's accumulated errors. Cumulative error is a doctrine "under which multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally

unfair. We have found cumulative error only where the individual errors were themselves substantial, bordering, at least, on the prejudicial." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010) (citation omitted). We have indicated in this Opinion that Appellant's trial counsel did not make any errors; therefore, there can be no reversal based on cumulative error.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the Woodford Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Kieran J. Comer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General
Frankfort, Kentucky